**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ANDRE P. HOWTON,**

        **Plaintiff,**

v.

**ZACHARY FECSKO, in his official and individual capacity;
AARON DALTON, in his official and individual capacity;
RICHARD PANICO, in his official and individual capacity.**

        **Defendants.**

ELECTRONICALLY FILED
Jul 10 2020
U.S. DISTRICT COURT
Northern District of WV

Civil Action No.: __1:20-CV-135__

Judge: _____Kleeh_____

## COMPLAINT

### PRELIMINARY STATEMENT

This is an action brought under 42 U.S.C. §1983 and the laws of the State of West Virginia to hold the City of Westover, *via* its policymaker, the Chief of Police, and two of its officers accountable for their unreasonable, unlawful, and malicious violations of the Plaintiff's rights.

In or around the early morning hours of New Year's Day, 2019, the Plaintiff was unlawfully, physically pulled out of his home by Defendant Zachary Fecsko ("Fecsko"). As Defendant Fecsko pulled the Plaintiff across the threshold, he angrily yelled "get your ass out here *boy*!" The Plaintiff is an African American male in his fifties, the officer a Caucasian male in his twenties. Defendant Fecsko then threw the Plaintiff onto the concrete and maliciously assaulted and battered him—beating him in the torso and face, striking him no less than thirteen (13) times, ultimately fracturing multiple facial bones, breaking out at least three (3) teeth, and causing other serious and permanent injuries.

1

Unbeknownst to Defendant Fecsko at the time of the attack, his partner that evening, Defendant Aaron Dalton ("Dalton"), had his body camera running and much of this misconduct was caught on film. During the events giving rise to this action, Defendant Dalton encouraged the beating by his fellow officer, attacked a bystander who attempted to protect the Plaintiff, and actively ignored his lawful duty to protect the Plaintiff from Defendant Fecsko's attack. Notably, Defendant Dalton was forced to resign from his previous position after tasing and beating a man in handcuffs with multiple other officers; a fact that was known by the City of Westover at the time of hiring.

After maliciously assaulting and battering the Plaintiff, the Defendants failed to render much needed medical aid. Instead, they charged him with four crimes—none of which were related to their reason for being at his home—which was to remove another person. The Plaintiff was then taken to the police station, hauled into court for an arraignment, and driven over an hour away to the North Central Regional Jail. When they finally arrived at the jail, the Plaintiff was turned away due to the severity of his injuries. Rather than take him to a hospital, Defendant Fecsko drove the Plaintiff back to his residence and stated something to the effect of, "don't say I didn't show you any mercy." As for the charges lodged against the Plaintiff, after he and the undersigned counsel refused all plea offers and requested what would have been the City of Westover's first jury trial in anyone's memory, all charges were dropped.

The Plaintiff now turns to this Honorable Court in pursuit of justice.

**JURISDICTION AND VENUE**

1. This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988, alleging violations of the First and Fourth Amendments of the Constitution of the United States of America, as well as the laws of the State of West Virginia.

2. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C §§1331,1343, and 1367.

3. Venue is proper before this Honorable Court pursuant to 28 U.S.C. §1391(b).

## PARTIES

4. The Plaintiff, Andre P. Howton (the "Plaintiff"), is a resident of Monongalia County, and at all times relevant hereto, resided in the City of Westover, West Virginia.

### Defendant Zachary Fecsko

5. At all times relevant hereto, Defendant Zachary Fecsko ("Fecsko") was employed by the Westover Police Department ("WPD").

6. Prior to being hired by the WPD, Defendant Feskco was charged with domestic battery and burglary after he allegedly broke into his ex-girlfriend's apartment in the middle of the night and destroyed her belongings. *See e.g.,* William Dean, Westover Police Officer Has Criminal Past, THE DOMINION POST (July 21, 2019), https://www.dominionpost.com/2019/07/21/west over-police-officer-has-criminal-past/ (attached hereto as "Ex. A").

7. It was further alleged that, the day prior, Defendant Fecsko had a physical altercation with his ex-girlfriend. During which, he grabbed her by the throat, threw her against a wall, shoved, and slapped her – leaving scratches, bruises, and scrapes in various locations on her body. *Id.*

8. It was further alleged that Defendant Fecsko threatened to kill his ex-girlfriend, post nude and/or unflattering photos of her online, withdraw her from her college courses, and pin the murder of Nolan Burch on her[1]. *Id.*

---

[1] Nolan Burch was a freshman pledge at Kappa Sigma Fraternity, where Fecsko was President, who tragically died in 2014. *See* Bob Hazen and Matt Bellanger, 18-year-old student mourned at West Virginia University While Investigation Continues, WTAE Pittsburgh Action News (November 15, 2014)

3

9. It was further alleged that while making these threats, Defendant Fecsko told his ex-girlfriend that, due to his relationship with an ex-sheriff, he "owned the town." *See* "Ex. A."

10. Despite these allegations, charges, and the plea agreement he entered into as a result, Defendant Fecsko was hired by the WPD as an officer.

**Defendant Aaron Dalton**

11. On the day of the events giving rise to this action and for a period prior thereto, Defendant Aaron Dalton ("Dalton") was employed by the WPD.

12. Prior to being hired by the WPD, Defendant Dalton, was employed by the City of Fairmont, West Virginia, Police Department ("FPD").

13. Defendant Dalton was terminated and/or encouraged to resign from the FPD for misconduct or unsatisfactory service. *See* Excerpts from Defendant Dalton's Personnel File, obtained from the City of Westover via FOIA Request, at 3 (attached hereto as "Ex. D").

14. While employed at the FPD, Defendant Dalton was sued in his individual and official capacity for taking part in an unprovoked attack on two men at a party. *See e.g.,* Kyla Asbury, Man Sues Fairmont Police for Attack, WEST VIRGINIA RECORD (April 6, 2010), https://wvrecord.com/stories/510598111-newsinator-man-sues-fairmont-police-for-attack (attached hereto as "Ex. E").

15. During the incident referenced in the above paragraph, victims were wrestled to the ground, punched in the face, tased, kicked, beaten, and had mace sprayed directly in the face. *Id.*

---

https://www.wtae.com/article/18-year-old-student-mourned-at-west-virginia-university-while-investigation-continues/7468795 (attached hereto as "Ex. B") and Excerpts from Defendant Fecsko's Personnel File, obtained from the City of Westover via FOIA Request, at 4, (attached hereto as "Ex. C").

16. The victims made no resistance, attempted to follow all directives, and begged the officers to stop. Nonetheless, the officers continued to kick the men mercilessly for several minutes. *See e.g.,* Compl. Civil Action No. 10-C-172 (attached hereto as "Ex. F").

17. After handcuffing the victims, the officers then fractured one of the victim's noses. *Id.* and *See* "Ex. E."

18. In addition to the fractured nose, the victim further suffered a cut over one of his eyes; two black eyes; bruises behind his ears, on his ribs, and leg; a lacerated elbow; and ripped ears. *Id.*

19. The lawsuit was settled out of court within three (3) months of being filed. *See* U.S. District Court Northern District of West Virginia Civil Docket Report for Case #: 1:10-cv-00068-IMK (attached hereto as "Ex. G").

20. Additionally, a note in the WPD's personnel file for Defendant Dalton reads "[h]e was involved in a lawsuit filed against the city for racial profiling??" *See* "Ex. D, at 13."

21. Defendant Dalton's personnel file also notes a deficiency regarding his background check and references to his current employment, as he was on Administrative Leave at the time he applied to the WPD, contrary to what he listed on his application. *Id.,* at 14 - 15.

22. Knowing the above facts, the WPD hired Defendant Dalton.

### Defendant Richard Panico.

23. At all times relevant herein, Defendant Richard Panico ("Panico") was employed by the WPD and, upon information and belief, was a resident of Monongalia County West Virginia.

24. Defendant Panico is the Chief of Police for the WPD and its "policymaker," as contemplated by the governing laws pertinent to this action.

25. Despite the video evidence in this case, Defendant Panico has publicly condoned the other Defendants' behavior and stated that it was aligned with the WPD's policies, as there are "no rules of the road" in such instances. *See e.g.,* William Dean, <u>Defense Attorneys: Video Shows Police Used Excessive Force During Arrest of Westover Man</u>, THE DOMINION POST (June 8, 2019), https://www.dominionpost.com/2019/06/08/defense-attorneys-video-shows-police-used-excessive-force-during-arrest-of-westover-man/ (attached hereto as "Ex. H").

26. At all times relevant herein, the acts and omissions of the Defendants were pursuant to the customs, policies, practices, and/or procedures of the City of Westover *via* its law enforcement entity, the WPD, and its policymaker(s).

27. At all times relevant herein, each Defendant acted under the color of the laws, statutes, and regulations of the State of West Virginia.

## FACTS

### The Officers' Visit to The Plaintiff's Residence

28. In the early morning hours of New Year's Eve/New Year's Day, ringing in 2019, Defendants Fecsko and Dalton, while working as officers for the WPD, arrived at the Plaintiff's residence in Westover, Monongalia County, West Virginia.

29. During the visit, the Plaintiff requested the officers assist in removing a woman from his home.

30. An argument had taken place between the Plaintiff and the woman because of her wish to use drugs.

31. The Plaintiff opposed the woman's wish to use drugs, which is well-reflected in Defendant Dalton's bodycam footage from that night. *See generally* Dalton Body Cam Footage.[2]

32. During the first few minutes of the officers being in the Plaintiff's residence, he made several comments to the woman, a social friend, about his disappointment in her choices to use drugs.

### "A Free Country"

33. The woman complained to Defendant Fecsko about this, and Defendant Fecsko responded- "it's a free country, he can make comments. You ignore him." *See* Dalton Body Cam Footage at 7:20 – 7:23.

34. When the woman continued to complain about the Plaintiff's remarks, Defendant Fecsko said "we're in his house right now ma'am." *Id.* at 7:54 – 7:57.

35. Defendant Fecsko told the woman to ignore the Plaintiff's comments several more times before finally escorting her out of the home. *Id.* at 11:19 – 11:21, 11:25, and 12:06 – 12:08.

36. After the woman was taken into the police cruiser just a few feet from the Plaintiff's front door, he was still very upset about the situation and continued to make statements to the woman, calling her a "crack head" and other similar things, from within his residence.

37. For some unknown reason, Defendant Fecsko immediately changed his feelings about the fact that this is a free country, and that the Plaintiff's speech was protected by the First Amendment, which is nearly fully acknowledged just minutes earlier.

---

[2] Because this piece of evidence is a video, it cannot be attached hereto. However, all Defendants have access to the video, as they provided it to the undersigned counsel through the discovery process when they charged the Plaintiff with Disturbing the Peace, Disorderly Conduct, Obstruction, and Battery on an Officer following the events at issue herein. All of these charges were later dropped.

## Defendant Fecsko Attacks Plaintiff While Defendant Dalton
## Watches and Encourages the Brutality

38. Defendant Fecsko became enraged, he said to the Plaintiff "you're in your own house you can do that stuff. If you're going to come out here and yell, you're going to see a different person. Do you understand me?" *Id.* at 13:58 – 14:03.

39. When the Plaintiff replied "I'm in my house," Defendant Fecsko pointed his finger directly in the Plaintiff's face and shouted "get in your house and shut up. You hear me?" *Id.* at 14:01 – 14:07.

40. Defendant Fecsko, still shouting in the Plaintiff's face, then taunted him by motioning for him to come towards him and saying "come outside again and start yelling." *Id.* at 14:09 – 14:11.

41. Once again, the Plaintiff replied "no, I'm in my house;" to which, Defendant Fecsko stated "Exactly. Inside. I'll be back down here tonight if you come outside again." *Id.* at 14:11 – 14:15.

42. As he walks away from the Plaintiff's home, Defendant Fecsko says "I don't care if you're in your doorway." *Id.* at 14:21 – 14:23.

43. The Plaintiff, still upset, yells, "crack head" at the woman, and Defendant Fecsko begins his attack. *Id.* at 14:18 – 14:23

44. Suddenly, Defendant Fecsko, who is nearly to his police cruiser, turns around, marches back, and grabs the Plaintiff—who is still standing inside of his home—by the collar of his shirt, stating, "get your ass out here, boy!" *Id.* at 14:23 – 14:26.

45. At the time Defendant Fecsko called the Plaintiff "boy," Defendant Fecsko, was in his twenties.

46. The Plaintiff is an African American male in his fifties.

8

47. Defendant Fecsko's use of the word "boy" towards the Plaintiff was due to the Plaintiff's race.

48. After swearing at the Plaintiff and calling him "boy," Defendant Fecsko then pulls the Plaintiff from inside of his home with such force that he also pulls out a bystander, Plaintiff's neighbor, from the residence and into the concrete parking lot. *Id.* at 14:26 – 14:29.

49. After being thrown to the ground, the Plaintiff looks at Defendant Fecsko and says, "you pulled me out." *Id.* at 14:33 – 14:36.

50. Immediately, Defendant Fecsko attacks the Plaintiff without any provocation or justifiable use of force, grabbing him by the neck and punching him in the torso repeatedly. *Id*. at 14:36 – 14:41.

51. Defendant Fecsko, proceeds to beat the Plaintiff in various positions until he suffers serious and permanent injuries, including, but not limited to, multiple facial and jaw fractures, broken teeth, black eyes, and severe lacerations and abrasions. *Id*. at 14:51 – 15:15.

52. While watching the beating, Defendant Dalton shouts "spray that motherfucker! Spray him!" *Id.* at 14:56-14:58.

53. As the Plaintiff is pinned to the ground, unable to move, Defendant Dalton yells for Defendant Fecsko to "spray" the Plaintiff several more times. *Id.* at 15:10 – 15:13.

54. After Defendant Fecsko finally stops beating the Plaintiff, while the Plaintiff is lying on the ground, visibly injured and reeling in pain, Defendant Dalton yells "you asked for that Andre. You earned it." *Id*. at 15:37 – 15:40.

55. At no time during this encounter did the Plaintiff threaten either officer, or anyone else, nor did he represent a danger to himself or others.



Above and below: Photos of Andre Howton taken approximately three days after the beating.



# COUNT I

**42 U.S.C. §1983- Retaliation and Use of Excessive Force in Violation of 1st Amendment of the United States Constitution.**

56. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-55, as if fully set forth herein.

57. When alleging a First Amendment retaliation claim, a Plaintiff must show "(1) that [plaintiff's] speech was protected; (2) defendant's alleged retaliatory action adversely affected the plaintiffs constitutionally protected speech; and (3) a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." *See Dickerson v. Duncan,* Civil Action No. 7:19CV00802, 2020 U.S. Dist. LEXIS 2543, at 6-7 (W.D. Va. Jan. 7, 2020) (internal quotations omitted) (citing *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685-86 (4th Cir. 2000)).

58. Defendant Fecsko, while acting under the color of the law, violated the Plaintiff's constitutional rights by using excessive force against him and arresting him for speaking mere words from inside of his own home.

59. The Plaintiff was engaged in protected speech, as Defendant Fecsko clearly states more than once during the encounter.

60. Defendant Fecsko took retaliatory action against the Plaintiff that adversely affected the Plaintiff's constitutionally protected speech, when he pulled him out of his own home, aggressively beat, and arrested him.

61. As stated by Fecsko, these actions were directly motivated by the Plaintiff's yelling. *See* Dalton Body Cam Footage at 13:58-14:03.

62. Defendant Fecsko lacked probable cause when he took these retaliatory actions against the Plaintiff.

63. During the encounter, Defendant Fecsko personally stated multiple times that the Plaintiff could say whatever he wanted inside his own home.

64. Nevertheless, Defendant Fecsko violated the Plaintiff's First Amendment rights to the freedom of speech when he assaulted, battered, and arrested the Plaintiff for his mere use of words, which were not even directed at Defendant Fecsko.

65. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and will continue to suffer substantial damages, both compensatory and general, including, but not limited to, medical bills, loss in income, loss in earning capacity, severe emotional distress, mental anguish, and past and future physical pain and suffering.

66. Because Defendant Fecsko's actions, and possibly other employees, agents, and/or representatives of the WPD, were "motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights' of the Plaintiff, an award of punitive damages is appropriate the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30,56,103 SS. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

## COUNT II

### 42 U.S.C. §1983 - Violation of the 4th Amendment of the United States Constitution

67. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-66, as if fully set forth herein.

68. Defendant Fecsko, while acting under the color of the law, violated the Plaintiff's constitutional rights by unreasonably seizing the Plaintiff and using excessive force against him, as described herein throughout, which resulted in the Plaintiff's injuries.

69. Defendant Fecsko's actions violated the constitutional rights guaranteed to the Plaintiff by the Fourth Amendment of the United States Constitution.

70. Defendant Fecsko's actions were not taken in good-faith and were in violation of clearly established law.

71. Defendant Fecsko used excessive force at the time he unreasonably and unlawfully pulled the Plaintiff from his home and aggressively beat him.

72. Defendant Fecsko's actions were unnecessary, unreasonable, unlawful, and unjustified.

73. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff suffered substantial damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, pain, and suffering.

74. Because Defendant Fecsko's actions, and possibly other employees, agents, and/or representatives of the WPD, were "motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights' of the Plaintiff, an award of punitive damages is appropriate the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30,56,103 SS. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

## COUNT III

**42 U.S.C. §1983- Failure to Intervene in Violation of the 4th Amendment of the United States Constitution.**

75. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-74, as if fully set forth herein.

76. Defendant Dalton had a duty to intervene when Defendant Fecsko was violating the Plaintiff's Constitutional rights, which resulted in the infliction of excessive force upon the Plaintiff.

77. Defendant Dalton observed and/or had reason to know that excessive force was being inflicted upon the Plaintiff without a legitimate goal or justification.

78. Defendant Dalton had the opportunity and means to prevent the excessive use of force and/or violations of the Plaintiff's Constitutionally protected rights from occurring.

79. Not only was Defendant Dalton deliberately indifferent to Defendant Fecsko's attack on the Plaintiff, he encouraged the beating, repeatedly telling Defendant Fecsko to "spray" the Plaintiff, even after the Plaintiff had been visibly injured.

80. "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *See Randall v. Prince George's Cty., Md.,* 302 F.3d 188, 203 (4th Cir. 2002). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id*. at 204 (internal footnote omitted).

81. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff suffered substantial damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, pain, and suffering.

82. Because the Defendants' actions, and possibly other employees, agents, and/or representatives of the WPD, were "motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights' of the Plaintiff, an award of punitive damages is appropriate the fullest extent permitted by law." *See Morning v. Dillon Cty.*, No.: 4:15-

cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30,56,103 SS. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

## COUNT IV

### 42 U.S.C. §1983 – *Monell* Liability

83. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-82, as if fully set forth herein.

84. The WPD is the law enforcement agency in the City of Westover, Monongalia County, West Virginia.

85. The Chief of the WPD, Defendant Pancio, is the "policymaker" with respect to WPD, as a law enforcement agency. *See e.g., Revene v. Charles County Comm'rs*, 882 F. 2d 870,874 (4th Cir. 1989).

86. Municipal liability can attach under Monell for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

87. Defendant Panico has a custom, pattern, practice, and/or procedure of hiring police officers who he knows have committed acts of violence and/or have a propensity to do so.

88. When these officers inevitably commit acts of violence while working for the WPD, Defendant Panico ratifies their unconstitutional acts and assists in covering up the officer's bad actions by charging members of the community, who fall victim to these officers, of crimes.

89. As evidence of the above-stated custom, pattern, practice, and/or procedure, the WPD knew that Defendant Fecsko had been charged with domestic violence and that Defendant Dalton had been sued for physically attacking two men at a party; and when the two attacked the Plaintiff and his neighbor, the victims were both charged with battery on an officer.

90. In the instances cited above, no person or law enforcement officer was in Imminent Danger and no exigent circumstances existed.

91. Following the attack on the Plaintiff, Defendant Panico ratified the actions of Defendants Fecsko and Dalton, publicly stating that his officers have "no rules of the road" in such instances.

92. Consistent with and as a result of WPD's custom, pattern, practice, and/or procedure, Defendant Fecsko unjustifiably and unlawfully pulled the Plaintiff from his home and beat him until he was severely, and likely, permanently injured.

93. As a direct and proximate result of the WPD's custom, pattern, practice, and/or procedure, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.

94. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff suffered substantial damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, pain, and suffering.

95. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the City of Westover and the WPD, through its policymaker, Defendant Panico, is liable for the harms and losses sustained by the Plaintiff.

## COUNT V

### Intentional Infliction of Emotional Distress

96. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-95, as if fully set forth herein.

97. Defendant Fecsko pulling the Plaintiff from his home and beating him was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

98. Defendant Fecsko acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from his outrageous conduct.

99. Defendant Fecsko's actions caused the Plaintiff to suffer severe emotional distress as he was being beaten for no reason.

100. The emotional distress the Plaintiff experienced was so severe, no reasonable person could be expected to endure it.

101. As a direct and proximate result of Defendant Fecsko's actions, the Plaintiff suffered substantial damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, pain, and suffering.

102. The actions of Defendant Fecsko against the Plaintiff were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## COUNT VI

## Battery

103. The Plaintiff hereby incorporates by reference the allegations contained paragraphs, 1-102, as if fully set forth herein.

104. Defendant Fecsko intentionally pulled the Plaintiff from his home, without his consent.

105. Defendant Fecsko then threw the Plaintiff to the ground and proceeded to beat him until the Plaintiff was severely injured.

106. As a direct and proximate result of Defendant Fecsko's actions, the Plaintiff suffered substantial damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, pain, and suffering.

**WHEREFORE,** the Plaintiff, Andre Howton, demands judgment against the Defendants for:

a) Compensatory damages for all past and future economic losses and expenses incurred by the Plaintiff as a result of the Defendants' misconduct;

b) General damages for all past and future physical pain, mental suffering, and emotional distress suffered by the Plaintiff;

c) Punitive damages to the fullest extent permitted by law;

d) Pre-judgment and post-judgment interest;

e) Costs incurred in this action and reasonable attorney fees under 42 U.S.C. *§1988*; and

f) Such other further specific and general relief as may become apparent from discovery as this matter matures for trial.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

**ANDRE P. HOWTON,**

By Counsel

_____/s/ Beth L. Lebow_____
Beth L. Lebow, Esq. (W. Va. Bar No. 13009)
Ryan J. Umina, Esq. (W. Va. Bar No. 13056)
**UMINA, DAVIS, MINUTELLI & GUTTA, PLLC**
125 Greenbag Road
Morgantown, WV 26501
Phone: (304) 838-8024
Fax: (304) 715-3638
beth@udmg.com
ryan@udmg.com